No. 5:18-cv-01074-XR

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

_____

FEDERAL NATIONAL MORTGAGE ASSOCIATION;
BANK OF AMERICA, N.A.; AND
SETERUS, INC.
Defendants - Appellants


vs.


LEROY RAMIREZ
Plaintiff - Appellee

_____


APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION
BANKRUPTCY CASE NO. 13-52576-CAG

---

## BRIEF OF APPELLANTS

---

Matt D. Manning, Esquire (Bar # 24070210)
R. Dwayne Danner, Esquire (Bar # 00792443)
*Counsel for Appellants Federal National
Mortgage Association and Seterus, Inc.*

David I. Swan, Esquire
*Admitted Pro Hac Vice*
*Counsel for Appellant Bank of America, N.A.*

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE CASE.................................................................1

STATEMENT OF THE ARGUMENT ...................................4

STATEMENT OF JURISDICTION.......................................5

STANDARD OF REVIEW ...................................................6

STATEMENT OF THE ISSUES.............................................6

STATEMENT OF FACTS ....................................................7

I.  EVENTS LEADING TO THE INITIAL BANKRUPTCY CASE................7

II.  THE CIVIL ACTION.................................................8

III.  THE REOPENED BANKRUPTCY CASE ......................9

IV.  THE REMOVAL ACTION........................................11

V.  THE SEPTEMBER 26, 2018 HEARING ......................12

ARGUMENT ......................................................................14

I.  THE BANKRUPTCY COURT APPLIED THE WRONG STANDARD FOR NOTICE UNDER SUPREME COURT PRECEDENT, THE REMOVAL STATUTE AS APPLIED BY THE 5TH CIRCUIT, AND THE BANKRUPTCY RULES ...............................14

II.  APPELLEE'S FIRST AMENDED PETITION IN THE STATE COURT CIVIL ACTION DID NOT PROVIDE INFORMATION FROM WHICH APPELLANTS COULD ASCERTAIN THAT THE CASE WAS REMOVABLE ....................................19

III.  APPELLEE FAILED TO PROVIDE NOTICE TO THE APPELLANTS OF THE REOPENING OF HIS BANKRUPTCY CASE AND BANKRUPTCY PROCEEDINGS WHICH WOULD HAVE MADE FANNIE MAE AWARE THAT THE CASE WAS REMOVABLE ....................................22

IV.  IF THE AMENDED COMPLAINT PROVIDED ADEQUATE NOTICE, THERE WAS EXCUSABLE NEGLECT AS TO WHY FANNIE MAE DID NOT FILE THE NOTICE OF REMOVAL UNTIL AUGUST 2018 ...............................26

CONCLUSION ....................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 50-Off Stores, Inc.*,
  231 B.R. 592 (Bankr. W.D. Tex. 1999)............................................................15

*In re AMWC, Inc.*,
  109 B.R. 210 (Bankr. N.D. Tex. 1989)............................................................28

*Bass v. Denny*,
  171 F.3d 1016 (5th Cir. 1999) ..........................................................................6

*Bosky v. Kroger Texas, LP*,
  288 F.3d 208 (5th Cir. 2002) ...................................................................*passim*

*In re Casey*,
  198 B.R. 918 (Bankr. S.D. Cal. 1996)............................................................29

*Chapman v. Powermatic, Inc.*,
  969 F.2d 160 (5th Cir. 1992) ....................................................................18, 19

*City of N.Y. v. N.Y., N.H. & H.R. Co.*,
  344 U.S. 293 (1953)........................................................................................27

*Grannis v. Ordean*,
  234 U.S. 385, 34 S.Ct. 779 (1914).................................................................15

*Hawking v. Ford Motor Credit Co.*,
  210 F.3d 540 (5th Cir. 2000) ............................................................................5

*Henderson v. Belknap (In re Henderson)*,
  18 F.3d 1305 (5th Cir. 1994) ............................................................................6

*In re Kendavis Holding Co.*,
  249 F.3d 383 (2001)........................................................................................15

*In re Kennard*,
  970 F.2d 1455 (5th Cir. 1992) ..........................................................................6

*In re Lashinger*,
No. 97-15113DWS, 1999 WL 409389 (Bankr. E.D. Penn Jun. 15,
1999) ....................................................................................................29

*Leroy Ramirez v. Bank of America, N.A., et al.*,
Cause No. B-17-1423-CV-B ................................................................1

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306, S.Ct. 652, 658 (1950).....................................15, 25, 26

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
526 U.S. 344 (1999)............................................................................15

*In re Pilgrim's Pride Corp.*,
No. 08-45664 (DML), 2011 WL 576070 (Bankr. N.D. Tex. Feb. 9,
2011) ....................................................................................................28

*In re Placid Oil Co.*,
450 Fed.Appx. 323 (5th Cir. 2011).....................................................15

*In re SBMC Healthcare, LLC*,
547 B.R. 661 (S.D. Tex. 2016) ........................................................5, 6

*In re Schepps Food Stores, Inc.*,
152 B.R. 136 (Bankr. S.D. Tex. 1993) ...............................................16

*In re Spring Valley Farms*,
863 F.2d 832 (11th Cir. 1989) ............................................................27

*In re Yoder Co.*,
784 F.2d 1114 (6th Cir. 1985) ............................................................27

**Statutes**

28 U.S.C. §158(a)(1)..................................................................................5

28 U.S.C. §1446.......................................................................................17

28 U.S.C. §1446(b) ..................................................................................17

28 U.S.C. §1446(b)(1)........................................................................18, 20

28 U.S.C. §1446(b)(3).............................................................18, 19, 20, 21

28 U.S.C. §§1452, 1446....................................................................................6

Texas Debt Collection Act.............................................................................2, 8

## STATEMENT OF THE CASE

This appeal arises from the granting of a motion to remand by the Bankruptcy Court for the Western District of Texas (the "Bankruptcy Court").

Leroy Ramirez ("Appellee") and his wife were debtors (collectively "Debtors") in a joint bankruptcy proceeding filed in 2013 (the "Initial Bankruptcy Case"), in which they both received a discharge. Four years later, in September 2017, the Appellee filed a civil action against Federal National Mortgage Association ("Fannie Mae"), Bank of America, N.A. ("BANA"), and Seterus, Inc. ("Seterus") (collectively "Appellants") in a case designated as *Leroy Ramirez v. Bank of America, N.A., et al.*, Cause No. B-17-1423-CV-B, in the 156th Judicial District, Bee County, Texas (the "Civil Action").

In January 2018, approximately five months after the commencement of the Civil Action, the Appellee and his spouse reopened their bankruptcy case (the "Reopened Bankruptcy Case"). The purpose of the Reopened Bankruptcy Case was to list the Civil Action as an asset on the Debtors' schedules and attempt to exempt any potential proceeds of the litigation from their creditors. The reopening of the Initial Bankruptcy Case and the subsequent motions and orders directly related to the Civil Action were filed without notice to Fannie Mae. In fact, Fannie Mae was never noticed of the Initial Bankruptcy and was unaware of the Reopened Bankruptcy Case until August 6, 2018 when alerted to by co-defendants.

1

The Civil Action, as originally filed (the "Original Complaint"), included three counts (fraud, unjust enrichment, and trespass to try title) and sought damages in the amount of $100,000 or less. The Original Complaint made no reference whatsoever to the Initial Bankruptcy Case. On April 6, 2018, the Appellee filed a First Amended Petition (the "Amended Complaint") which included three additional counts (wrongful foreclosure, breach of contract, and Texas Debt Collection Act) and increased his alleged damages in excess of $2 million. The Amended Complaint, like the Original Complaint, was served on Fannie Mae.

The Amended Complaint was filed approximately four months after the Reopened Bankruptcy Case and at the same time that the Debtors were seeking approval in the Bankruptcy Court of a settlement directly related to the Civil Action. The Amended Complaint made only a vague and ambiguous passing reference to "stress" that allegedly caused the Appellee to "turn to bankruptcy" in 2013 and list the house as "one of his assets" in his bankruptcy schedules. No other information about any bankruptcy filing was set forth. No date was stated; no bankruptcy court, venue, or division was identified; no identification of what type of bankruptcy (Chapter 13 or 7) was made; no indication of whether Appellee was granted or denied a discharge; and no bankruptcy counsel or Trustee contact information was provided. Indisputably, there was no reference, vague or otherwise, that Appellee had re-opened his bankruptcy case in 2018.

On August 10, 2018, within four days of becoming aware of the Reopened Bankruptcy Case, Fannie Mae promptly filed a Notice of Removal to the Bankruptcy Court, with the consent of BANA and Seterus.  In response, the Appellee filed a Motion to Remand to state court arguing among other things that the removal was untimely because the Amended Complaint filed in April 2018 made reference to bankruptcy.

On September 26, 2018, the Bankruptcy Court granted the Appellee's Motion to Remand.  In an oral ruling made from the bench after hearing testimony and argument, the Bankruptcy Court found that the Amended Complaint provided Fannie Mae with sufficient notice in April 2018 such that the Notice of Removal filed in August 2018 was untimely.  Further, the Bankruptcy Court held that Fannie Mae's purported untimely removal was not the result of excusable neglect on the sole grounds that delay of the Civil Action (as the result of the removal), with nothing more, prejudiced Appellee.  There was no showing, however, that a removal from state to federal court would delay the Civil Action; or, if there was any delay, how it would prejudice the Appellee.  In fact, the Appellee's own Amended Complaint alleged that he maintained uninterrupted possession of the Property, and there was no dispute that Appellee was not making any payments towards the loan, insurance, or property taxes during the Civil Action proceedings.

Appellants filed their Notice of Appeal in this Court on October 10, 2018.

3

## STATEMENT OF THE ARGUMENT

The Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") require a debtor to give notice of an amendment to bankruptcy schedules to "any entity affected thereby."  Fed. Bankr. R. 1009(a).  The Local Rules for the Bankruptcy Court require any pleadings filed in the bankruptcy proceeding to be served on "any entities adversely affected by the relief requested."  W.D. Bankr. Tex. L. Rule 9013(d)(1)(A).  Nevertheless, Appellee neglected to notice Fannie Mae (i) when he filed his Initial Bankruptcy, (ii) when he moved to reopen the Bankruptcy Case (iii) when he filed amended schedules listing and exempting claims against the Appellants, and (iv) when a settlement was filed with the Chapter 7 Trustee directly related to the Civil Action.  The Appellee, in fact, stipulated – and the Bankruptcy Court found – "that at no time during the pendency of the bankruptcy case . . . was Fannie Mae noticed with the bankruptcy."  [Trans. at 127, ln 20-23].[1]

The Bankruptcy Court, however, disregarded Appellee's non-compliance with the notice rules and improperly "confined" its "inquiry" to "whether or not notice was sufficient under the first amended complaint.  [Trans. at 128, ln. 6-8].  Yet even with this narrowed scope, the Bankruptcy Court further erred when it held that "the statute does not speak on terms of how much notice needs to be provided."  [Trans. at 130, ln. 11-12].   The Fifth Circuit has determined that when the

---

[1] References to the transcript of the Bankruptcy Court's hearing on September 26, 2018 will be noted as [Trans. at __, ln. __].

information that would support removal is set forth in an amended pleading, it must be "unequivocally clear and certain" to start the time limit for a notice of removal. *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002).  The Bankruptcy Court, applying a bare minimum standard of *any* notice, rather than *unequivocally clear and certain* notice, improperly found that a vague and ambiguous reference to a bankruptcy in 2013 was sufficient to trigger the time limit for a notice of removal.

Having found the removal untimely, the Bankruptcy Court also misapplied the standard for "excusable neglect" under Bankruptcy Rule 9006(b).  Using circular logic, the Bankruptcy Court held that the time could not be enlarged for Fannie Mae's removal because the removal was untimely and its untimeliness would delay the Civil Action.

## STATEMENT OF JURISDICTION

The United States District Court for the Western District of Texas has appellate jurisdiction pursuant to 28 U.S.C. §158(a)(1) as this is an appeal from a final order entered by a bankruptcy judge in a case and proceeding referred to the United States Bankruptcy Court for the Western District of Texas.

Jurisdiction is proper because this is an appeal from the Bankruptcy Court's order remanding the case to state court.  The Fifth Circuit Court of Appeals has recognized the authority of district courts to review bankruptcy court remand orders. *See Hawking v. Ford Motor Credit Co.*, 210 F.3d 540, 544, 550 (5th Cir. 2000); *In*

*re SBMC Healthcare, LLC*, 547 B.R. 661, 672 (S.D. Tex. 2016). Jurisdiction is also proper under §1452(b) because a district court's jurisdiction to review a bankruptcy court's remand order does not arise under any of the sections enumerated in §1452(b). *See SBMC Healthcare*, 547 B.R. at 673.

## STANDARD OF REVIEW

On review, a bankruptcy court's factual findings are reviewed for clear error and conclusions of law are reviewed *de novo*. *See Henderson v. Belknap (In re Henderson),* 18 F.3d 1305, 1307 (5th Cir. 1994); *In re Kennard*, 970 F.2d 1455, 1457-58 (5th Cir. 1992). Mixed questions of law and fact are reviewed *de novo*. *Bass v. Denny,* 171 F.3d 1016, 1021 (5th Cir. 1999).

## STATEMENT OF THE ISSUES

1.      Whether the Bankruptcy Court committed reversible error when it found that a single vague and passing reference to a bankruptcy in 2013 in Appellee's Amended Complaint filed in April 2018 provided Fannie Mae sufficient lawful notice of the Debtor's bankruptcy case re-opening in January 2018 such that Fannie Mae was charged with notice that the Civil Action was removable to the Bankruptcy Court under 28 U.S.C. §§1452, 1446, and Bankruptcy Rule 9027.

2.      Whether the Bankruptcy Court committed reversible error when it found that the Appellee's failure to provide Fannie Mae formal notice of his Initial Bankruptcy Case in 2013 or his Reopened Bankruptcy Case in 2018 was immaterial,

6

notwithstanding that such notice is (a) required under the Bankruptcy Rules, and (b) would have allowed Fannie Mae to ascertain that the Civil Action was removable.

3.     If Fannie Mae's removal was untimely, whether the Bankruptcy Court erred by deciding that there was no excusable neglect under Bankruptcy Rule 9006?

## STATEMENT OF FACTS

## I.     EVENTS LEADING TO THE INITIAL BANKRUPTCY CASE

1.     On August 1, 2007, Appellee executed a promissory note with Countrywide Home Loans, Inc. in the principal sum of $45,900.00 (the "Note"). The Note was secured by a Deed of Trust bearing the same date and relating to real and personal property located at 1414 East Rosewood Street, Beeville, Texas 78102 (the "Property").  The Note and Deed of Trust are referred to collectively as the "Loan."  [Dkt. No. 6-3, at 34].[2]

2.     Soon after executing the Note, Ramirez had difficulty making his loan payments and, in fact, stopped making payments altogether in August 2008 and defaulted on the Loan.

3.     As a result of his default, the Property was sold to Fannie Mae at a foreclosure sale almost a year later in June 2009.  Fannie Mae acquired title to the Property through a Substitute Trustee's Deed dated June 2, 2009.

---

[2] References to the Appellants' record will be noted as [Dkt. No. __, at __].

4.      Ramirez alleges that he was granted a loan modification in July 2009. Ramirez contends that he maintained possession of the Property until 2015, when he voluntarily moved with his family to San Antonio, where he currently resides.

5.      On September 25, 2013, Debtors filed for bankruptcy under Chapter 13.  [Dkt. No. 9-3, at 9-13].  On October 15, 2013, the case converted to Chapter 7, and on January 16, 2014, the Debtors received their discharge and the Initial Bankruptcy Case was closed.  *Id.* at 85.

## II.     THE CIVIL ACTION

6.      On August 22, 2017, Ramirez filed a civil action in the 156th Judicial District Court of Bee County against Appellants in the amount of $100,000.  In the Original Complaint, Ramirez alleged trespass to try title against Fannie Mae with respect to the Property and alleged fraud and unjust enrichment against the other Appellants.  [Dkt. No. 6-3, at 13-25].

7.      On April 6, 2018, Ramirez filed the Amended Complaint which seeks, among other things, over two million dollars in alleged damages, which is more than forty times the original balance of the Loan.  The Amended Complaint added Counts against BANA and Seterus for wrongful foreclosure, breach of contract, and violation of the Texas Debt Collection Act.  *Id.* at 63-79.

8.      The Amended Complaint made new vague assertions, not as part of a new Count, but in an expanded background fact section which stated:

"Ramirez experienced so much stress over his finances that in late 2013 he turned to bankruptcy in an effort to get relief.  In the bankruptcy schedules he listed the house as one of his assets."

*Id.* at 67.

No other suggestion relating to any bankruptcy was made in the Amended Complaint.

## III.    THE REOPENED BANKRUPTCY CASE

9.    On January 10, 2018, approximately five months after Appellee filed his Original Complaint in the state court, he and his spouse filed a Motion to Reopen their Chapter 7 Bankruptcy Case ("Motion to Reopen").  [Dkt. No. 9-3, at 88-93].

10.    On January 11, 2018, the United States Trustee filed a motion to appoint a Chapter 7 Trustee to determine if the Appellee's unscheduled assets were property of the estate and to review the propriety of any of his claimed exemptions. *Id.* at 95-102.  John Patrick Lowe was appointed Chapter 7 Trustee ("Trustee") on February 6, 2018.  [Dkt. No. 6-6].

11.    On January 12, 2018, Debtors, amended their Schedule B to list claims against third parties as assets ("Amended Schedule B").  The Amended Schedule B listed "adverse possession claim, potential wrongful foreclosure, breach of contract and fraud against FANNIE MAE for the house and note on the located at 1414 E. Rosewood St Beeville TX" [sic] and listed similar claims against BANA and

Seterus.  The Debtors listed these claims with a value of "unknown."  [Dkt. No. 9-3, at 112].

12.     On February 12, 2018, the Debtors amended their Schedule C to exempt 100% of Appellee's claims against the Appellants listed on the Amended Schedule B.  *Id*. at 118.  The Trustee filed Objections to the Debtors' Amended Schedule C: Property Claimed as Exempt.  *Id.* at 122-27.  The total amount of debt scheduled by the Debtors in their Bankruptcy Case is only $183,180.15, far less than the claims being asserted against the Appellants in the amount of $2 million.  *Id.* at 24.

13.     On April 4, 2018, the Trustee filed a Motion to Approve a Settlement between the Trustee and the Debtors regarding the Trustee's objection to the Debtors' exemptions (the "Settlement Motion").  *Id.* at 127-34.  The terms of the Settlement Motion included (a) that the Trustee would designate Plaintiff's lawyer in the Civil Action as special litigation counsel for the bankruptcy estates, (b) the Debtors and the Trustee would jointly prosecute the Civil Action, and (c) any net recovery from the Civil Action would be divided equally between the Trustee (for the benefit of the bankruptcy estates) and the Debtors (as part of their exempt property).  *Id.* at 129, ¶ 5.

14.     On April 30, 2018, the Bankruptcy Court approved the Debtors' and Trustee's Settlement Motion.  [Dkt. No. 6-6].

15.     Appellee did not send notice to Fannie Mae of the Debtors' Motion to Reopen, the Amended Schedules, the Settlement Motion, or any other document filed in the Reopened Bankruptcy Case, despite the fact that the documents filed in the Reopened Bankruptcy Case involved and directly impacted Fannie Mae.  *See* Dkt. No. 9-3, at 89-93 (certificate for motion to reopen without Fannie Mae included); *id.* at 116 (certificate of service for amended Schedules A/B without Fannie Mae included); *id.* at 120 (certificate of service for amended Schedule C without Fannie Mae included).

16.     Appellee filed his Amended Complaint in April 2018, approximately four months after filing his motion in the bankruptcy court to re-open his bankruptcy case in January 2018.

17.     To date, however, Appellee has never filed any notice in the Civil Action to notice either the state court or the Appellants of the Debtors' Reopened Bankruptcy Case or the Settlement Motion, which directly impacts the parties and the claims in the lawsuit.

## IV.   THE REMOVAL ACTION

18.     On August 6, 2018, Fannie Mae became aware for the first time of the Debtors' Initial Bankruptcy Case and the Reopened Bankruptcy Case when alerted to by co-defendants. Within four days, on August 10, 2018, Fannie Mae, with the

consent of BANA and Seterus, promptly filed a Notice of Removal to the Bankruptcy Court.  [Dkt. No. 6-3, at 3-11].

19.     On August 27, 2018, the Appellee filed a Motion to Remand the adversary proceeding back to state court arguing that the Notice of Removal was untimely and that the remand was warranted under the factors for abstention.  [Dkt. No. 6-4, at 4-32].  On September 17, 2018, Fannie Mae filed an Opposition to the Motion to Remand.  *Id*. at 206-29.  The Appellee filed a Reply on September 24, 2018.

## V.     THE SEPTEMBER 26, 2018 HEARING

20.     On September 26, 2018, after a hearing that included testimony from Fannie Mae and arguments from counsel, the Bankruptcy Court granted Appellee's Motion to Remand.  Because the Bankruptcy Court found that the Notice of Removal was not filed timely, it remanded the case without considering the abstention factors. The order was issued without an opinion, but the Bankruptcy Court's reasoning for its decision was given in an oral ruling, which can be found at pages 124 through 132 of the hearing transcript.  [Trans. at 124-134].

21.     Importantly, the Bankruptcy Court recognized that "[t]he record is clear, and, in fact, the plaintiff stipulated to this, that at no time during the pendency of the bankruptcy case . . . was Fannie Mae noticed with the bankruptcy."  [Trans. at 127, ln. 20-23].  Further, the court found that when the Initial Bankruptcy Case

was reopened and the Settlement Motion was granted, Appellants did not receive notice. [Trans. at 128, ln. 1-6].

22.     Thus, the Bankruptcy Court framed the issue as follows: "[w]hether or not notice was sufficient under the first amended complaint." [Trans. at 128, ln. 6-8]. The Bankruptcy Court found that when the Amended Complaint was served on Fannie Mae, "at this point in time there was notice provided to, in my judgment, Fannie Mae sufficient enough that they were on notice that they should have availed themselves of the removal provisions under the bankruptcy code." [Trans. at 129, ln. 6-9]. The Bankruptcy Court acknowledged that there was no indication in the Amended Complaint that Debtors had reopened their bankruptcy case. The Bankruptcy Court found, however, that because "the notice of the bankruptcy was in there . . . under the committee notes that were under 2002 and under the rule as written, that was sufficient notice to put them on that they needed to do further inquiry." [Trans. at 130, ln. 4-10]. Thus, the bankruptcy court incorrectly ruled, contrary to well-established precedent, that inquiry notice is equivalent to actual notice required to trigger the time period for removal.

23.     The Bankruptcy Court made this finding, in part, based upon the testimony of Fannie Mae's witness, Cynthia Kirk. [Trans. at 130, ln. 13-15]. In particular, the Bankruptcy Court found that "she acknowledged in review of the first amended petition or complaint that she was on notice, anyone could be on notice

that a bankruptcy had been filed." [Trans. at 128, ln. 13-15].  However, that was not the witness's testimony.  Rather, Ms. Kirk testified that a "Bankruptcy Notice" would have been effective, but Fannie Mae did not receive any notice of the Bankruptcy Case until August, 2018.  [Trans. at 67, ln 12-13, 20-25].

24.    Moreover, the Bankruptcy Court stated that the lack of notice of the Reopened Bankruptcy Case did not affect "the Court's inquiry at all because the motion to reopen predated the amended complaint . . . it would have moved the timeframe back, as opposed to forward."  [Trans. at 129, ln 12-18].  Fannie Mae's point, however, supported by its testimony, was that if given notice of the Reopened Bankruptcy Case, as the Debtors were obligated to do under the Bankruptcy Rules, it would have constituted effective notice of the right to remove the Civil Action, which was pending at that time.

25.    Finally, the Bankruptcy Court denied the Appellants' argument of excusable neglect, finding prejudice to the Debtor in that removal would cause delay in the Civil Action and that the reason for delay is the untimely removal.  [Trans. at 131-32].

## ARGUMENT

**I.    THE BANKRUPTCY COURT APPLIED THE WRONG STANDARD FOR NOTICE UNDER SUPREME COURT PRECEDENT, THE REMOVAL STATUTE AS APPLIED BY THE 5TH CIRCUIT, AND THE BANKRUPTCY RULES.**

As the United States Supreme Court has articulated, "[t]he fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 783 (1914).  However, this is a right that has "little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70, S.Ct. 652, 658 (1950).  Thus, "[a]n elementary and fundamental requirement of due process in any proceeding . . . is notice reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.*  As such, under the standard articulated by the Supreme Court in *Mullane*, a court must analyze the "particular facts of each case" to determine if notice was adequate.  *In re Kendavis Holding Co.*, 249 F.3d 383 (2001).[3]

This requirement of notice, as part of due process, is no different in bankruptcy.  *See In re Placid Oil Co.,* 450 Fed.Appx. 323, 324-25 (5th Cir. 2011) (requiring that notice be reasonably calculated to inform all interested parties in a bankruptcy case to satisfy Fourteenth Amendment due process); *In re 50-Off Stores,*

---

[3] *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc*., 526 U.S. 344 (1999), is an example of the importance of proper service and notice in the context of removal.  In this case, Michetti Pipe Stringing ("Michetti") alleged that Murphy Bros, Inc. ("Murphy") did not properly serve them with a copy of the summons and complaint.  Rather, Murphy only faxed a courtesy copy of the filed complaint to one of Michetti's vice presidents.  Michetti was, however, aware of the complaint, and, in fact, the parties were engaged in settlement discussions until Michetti was officially served with the complaint through certified mail.  Michetti then removed the action 30 days after receipt of service of the complaint but 44 days after receiving the faxed copy of the complaint.  The United States Supreme Court held that Michetti timely removed because the time to run did not start until the complaint was properly served, even if Michetti already had received a faxed copy of the filed complaint and was engaged in settlement discussions.

*Inc.*, 231 B.R. 592, 594 (Bankr. W.D. Tex. 1999) (notice requirement prevents a party from ambushing another without giving those an opportunity to protect their interests); *In re Schepps Food Stores, Inc.*, 152 B.R. 136, 138 (Bankr. S.D. Tex. 1993) ("Under the due process clause, known creditors must be given actual notice of the pending bankruptcy.")

The Bankruptcy Rules dictate how service should generally be affected and who needs to be served and noticed for each motion or form that is filed in the bankruptcy case.  *See* Fed R. Bankr. P. 7004 (describing requirements of the service of a summons); Fed R. Bankr. P. 2002 (describing the timing, content, and parties who must receive notice of various documents and pleadings).[4]  Certain Bankruptcy Rules specifically dictate what parties are to receive notice.  For example, Fed R. Bankr. P. 1009(a) provides: "A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed. The debtor *shall* give notice of the amendment to the trustee *and to any entity affected thereby*." (emphasis added).  In this case, the Debtors failed to follow the Bankruptcy Rules by not providing notice of their Amended Schedules to Fannie Mae.

---

[4] At one point in the ruling, the Bankruptcy Court stated that the Amended Complaint was sufficient notice to Fannie Mae "under the committee notes that were under 2002 and under the rule as written . . . that they needed to do a further inquiry."  [Trans. at 130, ln. 7-10].  However, if the Bankruptcy Court is referring to Bankruptcy Rule 2002, it does not explain how Appellee satisfied the rule and what committee notes or what part of the rule requires parties in interest to make a "further inquiry".

The Bankruptcy Court acknowledged that the Debtors, including Appellee, failed to provide any notice whatsoever in the Bankruptcy Case to Fannie Mae, and that the original complaint in the Civil Action provided no mention of the Appellee's Bankruptcy Case.  [Trans. at 127, ln. 7-23].   Nevertheless, the Bankruptcy Court "confined" the inquiry to whether notice was sufficient under the Amended Complaint.  [Trans. at 128, ln. 6-8].  Yet, as noted by the Bankruptcy Court in its ruling, Fed. R. Bankr. 9027, which is the Bankruptcy Rule dealing with removal, does not address what constitutes adequate notice of the right to remove.  However, notice is addressed under 28 U.S.C. §1446.  [Trans. at 127, ln 1-6].[5]

28 U.S.C. §1446(b) provides:

(1) The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court . . .

and

(3) … if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of *an amended pleading*, motion, order or other paper *from which it may first be ascertained that the case is one which is or has become removable.*

28 U.S.C. §1446(b) (emphasis added).

---

[5] Bankruptcy Rule 9027 is titled Removal and includes certain time limits and procedures.  28 U.S.C. §1446 is titled Procedure for removal of civil actions, contains some additional procedures not included in Rule 9027, and appears to apply when a bankruptcy case is not pending when the complaint is filed.

The Fifth Circuit has made an important distinction between the receipt of the "initial pleading" standard under (b)(1) and the receipt of an "amended pleading" standard under (b)(3). Under §1446(b)(1), the time to file a notice of removal runs after a defendant's receipt of the initial pleading "only when that pleading affirmatively reveals on its face" a basis for removal. *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992). In fact, the Fifth Circuit in *Chapman* rejected a due diligence requirement for determining whether a case is removable because it "promotes certainty and judicial efficiency by not requiring courts to inquire into what a particular defendant may or may not subjectively know." *Id.* at 163.

Ten years later, the Fifth Circuit, in *Bosky v. Kroger Texas, LP*, held that the timeliness standard articulated in *Chapman* under 28 U.S.C. §1446(b)(1) is not applicable to §1446(b)(3). 288 F.3d 208 (5th Cir. 2002). Rather, the information that would support removal in an amended pleading, motion, order, or other paper must be "'unequivocally clear and certain' to start the time limit for a notice of removal." *Bosky*, 288 F.3d at 211. As the court in *Bosky* noted, the language in §1446(b)(1) and §1446(b)(3) differs with respect to the specificity of facts supporting removability. §1446(b)(1) only requires that the initial pleading "set forth" a basis for removal, while §1446(b)(3) requires that the defendant be able to "ascertain" that removal is possible. *Id*. The Fifth Circuit explained that "setting forth" encompassed a broader range of information that could trigger the time limit

18

for removal, while "ascertain" required certainty. *Id*. Given the difference in meaning, "ascertain" seems to "require a greater level of certainty or that the facts supporting removability be stated unequivocally." *Id*. While the basis for removal in *Chapman* and *Bosky* was diversity, whereas the basis for removal in this case is federal question, the same interpretation and reasoning applies. In order to trigger the time limit for removal, the Amended Complaint would have to reveal the basis for removal with certainty.

In spite of this Fifth Circuit precedent, the Bankruptcy Court determined that "[t]he rule does not or the statute does not speak on terms of how much notice needs to be provided. It's just a question of was there notice provided." [Trans. at 130, ln. 11-13]. This is not correct, as a matter of law. The Fifth Circuit has defined the meaning of "ascertain" under 28 U.S.C. §1446(b)(3). A defendant is not required to further inquire if an amended pleading or other paper presented information that a case is removable. Rather, the amended pleading or other paper must show, on its face, without a doubt that the case can be removed, which did not happen in our case.

## II. APPELLEE'S FIRST AMENDED PETITION IN THE STATE COURT CIVIL ACTION DID NOT PROVIDE INFORMATION FROM WHICH APPELLANTS COULD ASCERTAIN THAT THE CASE WAS REMOVABLE.

Following its erroneous interpretation of the statute, the Bankruptcy Court found that there was notice of the Bankruptcy Case in the Amended Complaint, and the Court deemed that "was sufficient notice to put [appellants] on that they needed

to do a further inquiry." [Trans. at 130, ln. 6-10]. The "notice" in the Amended Complaint that the Bankruptcy Court found sufficient to trigger Fannie Mae's time to remove was a reference in the amended facts that "[appellee] turned to bankruptcy in an effort to get relief. In the bankruptcy schedules he listed the house as one of his assets." [Dkt. No. 6-3, at 67]. Importantly, nowhere else in the Amended Complaint did the Appellee mention bankruptcy, and the Bankruptcy Court acknowledged that "the motion to reopen wasn't indicated in the . . . amended complaint." [Trans. at 130, ln. 5-6].

By ruling as it did, the Bankruptcy Court incorrectly determined that any amount of notice, no matter how minimal, was sufficient. Again, as explained above, depending on whether removal is under §1446(b)(1) or §1446(b)(3), differing levels of notice are required under Fifth Circuit precedent. Since the Bankruptcy Court identified the Amended Complaint as the document that provided Fannie Mae notice, §1446(b)(3) is the applicable statute. Therefore, the Appellee's Amended Complaint must provide information "unequivocally clear and certain" that Fannie Mae could ascertain that the case was removable. *See Bosky*, 288 F.3d at 211. It did not do so.

A vague reference to a bankruptcy filing in 2013, does not provide unequivocally clear and certain information that the case could be removed. The Amended Complaint simply mentions that Appellee filed bankruptcy five years ago.

20

This reference gives no indication of the disposition of the bankruptcy case, which is particularly obscure and unforthcoming since the Appellee had just reopened the case to schedule and exempt the claims against the Appellants. While the Bankruptcy Court did not find it necessary that the Appellee's Amended Complaint reference the reopening of the bankruptcy case, that is just an example of more certain information that might have allowed the Appellants to ascertain that the case could be removed.

The Amended Complaint also included three new causes of action, additional facts, a twenty-fold increase in the amount of damages, and sought different forms of requested relief. As such, the Appellee's vague reference that he filed bankruptcy in 2013 was not an isolated modification in the Original Complaint, but rather it was buried in a multitude of new information in the Amended Complaint. The Appellants are not obligated to hunt for missing information, and there is no "due diligence requirement for determining whether a case is removable." *Bosky*, 288 F.3d at 210. Given the *Bosky* Court's analysis of the notice requirements of §1446(b)(3) and the Appellee's fragmented reference to a bankruptcy case filed in 2013, the Amended Complaint did not provide unequivocally clear and certain information that the case could be removed. Thus, the Bankruptcy Court erred, as a matter of law, when it found that the time to remove was triggered when the Amended Complaint was served on the Appellants in April 2018. Fannie Mae

removed the case within four days of when it became aware of the Bankruptcy Case

on August 10, 2018, and, therefore, the removal was timely.

## III.   APPELLEE FAILED TO PROVIDE NOTICE TO THE APPELLANTS OF THE REOPENING OF HIS BANKRUPTCY CASE AND BANKRUPTCY PROCEEDINGS WHICH WOULD HAVE MADE FANNIE MAE AWARE THAT THE CASE WAS REMOVABLE.

The Appellee failed to provide information in both his Original Complaint

and the Amended Complaint that would have alerted Appellants that the case was

removable.  The Appellee also neglected to file anything on the state court docket to

inform the judge or the parties in the Civil Action that the Trustee was a co-plaintiff,

with net proceeds split equally between the Debtors and the creditors.  Such a filing

would have also provided notice to Fannie Mae that the case was removable.  Most

importantly, however, the Appellee failed to give notice to Fannie Mae when it

moved to reopen the Bankruptcy Case.

As stated above, the Bankruptcy Rules specifically dictate how service should

be affected.   In addition, each bankruptcy court may have its own local rules

concerning notice.  When the Debtors moved to reopen their bankruptcy case, it was

done without notice to Fannie Mae.  The local rules for the Bankruptcy Court state

that, when a pleading is filed, at a minimum "the debtor, the trustee, any court

approved committee, the counsel for each of these entities, and any entities adversely

affected by the relief requested" must be served.   W.D. Bankr. Tex. L. Rule

9013(d)(1)(A) (emphasis added).  Further, the local rules also state that with any

motion and response, a certificate of service must reflect "service on affected entities." *Id.* at 9013(c). Fannie Mae is clearly an affected party because the Debtors were reopening their case to amend their schedules and include a litigation claim against Fannie Mae as an asset of the estate.

Moreover, the Federal Rules of Bankruptcy require that when voluntary petitions, lists, schedules and statements are amended, "[t]he debtor shall give notice of the amendment to the trustee and any entity affected thereby." Fed. Bankr. R. 1009(a). However, when the Debtors amended their Schedules B and C to include claims against the Appellants as an asset and to exempt it, this was done without notice to Fannie Mae as well.

The Appellee cannot claim that Fannie Mae's interests were unaffected by the reopening of the Initial Bankruptcy Case and subsequent settlement with the Trustee. After all, the Appellee was obviously aware of Fannie Mae's interest in the Property, as well as the need to properly serve Fannie Mae with the Original Complaint and the Amended Complaint in the Civil Action. Yet, the Appellee inexplicably neglected to serve Fannie Mae with pleadings in the Bankruptcy Case that dealt with and directly affected the claims in the Civil Action.

Nevertheless, the Bankruptcy Court improperly confined its inquiry to the Amended Complaint and flatly stated that notice of the reopening would not have affected its decision, because the Motion to Reopen predated the Amended

23

Complaint.  [Trans. at 129, ln. 10-14].  Thus, the Court reasoned, notice of the Motion to Reopen "wouldn't have done the defendants any good because it would have moved the timeframe back, as opposed to forward."  *Id.* at 16-18.  This reasoning is erroneous.

First, as explained above, bankruptcy notice to Fannie Mae was required by rule.[6]  The Appellee's failure to follow the notice rules necessarily impacts the issue of whether notice was sufficient under the removal statute.  Second, notice of the Motion to Reopen would clearly have assisted Fannie Mae to become aware of its basis for removal, and done so at an earlier point in time.  As the Bankruptcy Court's reason for the remand was an untimely removal, and its reason for not finding excusable neglect was delay, it is peculiar that the Court here found there would have been no benefit to an earlier, more direct notice.

Rather, the Bankruptcy Court based its decision on finding three purported opportunities for Fannie Mae to determine whether or not a bankruptcy had been filed.  First, the bankruptcy court noted "the testimony of Ms. Kirk."  [Trans. at 130, ln. 14-15].  However, the witness's testimony only acknowledged that "if you read the [amended] pleading, you can ascertain that a bankruptcy had occurred."  [Trans. at 79, ln. 10-11].  While the pleading mentions that Appellee experienced stress over his finances, turned to bankruptcy in late 2013, and listed the house as one of this

---

[6] *See supra* discussion Argument Part I.

assets, that is all that is stated.  The pleading does not give the case number or jurisdiction of the case, or mention that it had recently been reopened to schedule the claims involved in the Civil Action.  In fact, Fannie Mae did not receive any official notice of the Bankruptcy Case; Ms. Kirk testified Fannie Mae did not receive to have proper legal notice of the Initial Bankruptcy Case.  [Trans. at 67, ln. 20-25].

With respect to the second and third "opportunities" for notice of the bankruptcy, the Bankruptcy Court pointed to the Amended Complaint: "number two, the fact that it was in the amended petition, and, number three, that counsel for Fannie Mae and Seterus were aware of that . . ." [Trans. at 130, ln 15-17].  However, as detailed in the prior sections, the Appellee needed to plead facts that would have allowed the Appellants to ascertain that the case was removable.[7]  The vague reference to a 2013 bankruptcy does not satisfy that standard.

Fundamentally, the requirement of notice is a constitutional right afforded to every party in a lawsuit.  As the Supreme Court noted in *Mullane*, notice alerts parties to actions in a lawsuit and allows them the opportunity to respond to those actions.  The Bankruptcy Court improperly narrowed its analysis to the Amended Complaint, when the Appellee very easily could have, and was legally required to, provide Fannie Mae notice in the Bankruptcy Court.  The objective is fairness and due process, not a game of hiding the ball or giving your adversary the bare

---

[7] *See supra* discussion Argument Parts I and II.

minimum of notice possible.  The Appellee must not be able to benefit from failing to properly serve and give notice to Fannie Mae.  Due to the Appellee's failure to follow these rules, Fannie Mae did not know that the case was removable until August 6, 2018.  There should be consequences for Appellee's gamesmanship, and the Court should find that Fannie Mae timely removed the case to bankruptcy court on August 10, 2018.

## IV.   IF THE AMENDED COMPLAINT PROVIDED ADEQUATE NOTICE, THERE WAS EXCUSABLE NEGLECT AS TO WHY FANNIE MAE DID NOT FILE THE NOTICE OF REMOVAL UNTIL AUGUST 2018.

Under Bankruptcy Rule 9006(b)(1), the court, in its discretion, may enlarge the time for an act or motion to be done where the failure to act was the result of excusable neglect.  As described by the Supreme Court in *Pioneer Investment Services*, excusable neglect permits courts to, "accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control."  507 U.S. 380, 388 (1993).  Excusable neglect is an "elastic concept," and it should not be strictly limited."  *Id.* at 392.  To determine whether excusable neglect applies to allow a late filing, the factors to address are: (1) the danger of prejudice to the debtor; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was in the movant's reasonable control; and (4) whether the movant acted in good faith. *Id.* at 395.

In *In re Thomas*, a Chapter 7 case in the Western District of Kentucky, a creditor filed a motion under Bankruptcy Rule 9006 to enlarge time to file a notice of removal under Bankruptcy Rule 9027.  339 B.R. 640 (Bankr. W.D. Ky. 2006). The creditor alleged that the debtors failed to provide the creditor with notice of their bankruptcy and failed to list assets, assignments and transfers, and a lawsuit between the debtors and creditor.  *Id*. at 641.  The court held that there was excusable neglect because debtors' own failure to disclose the lawsuit and assets caused the delay.  *Id*. at 642.  The court further held that, since the debtors were the cause of the delay, there could be no prejudice to them.  *Id*.  When the creditor did learn of the bankruptcy, it promptly worked with the trustee to have the case reopened and a notice of removal filed.  *Id.*

Similar to the creditor filing the removal in *Thomas*, Fannie Mae did not receive notice in Appellee's Bankruptcy Case, and, thus, was initially unaware that the Civil Action was removable.  There cannot be prejudice to the Appellee as it was his own failure to notice Fannie Mae in the bankruptcy case that caused the delay. *See e.g. City of N.Y. v. N.Y., N.H.& H.R. Co.*, 344 U.S. 293 (1953) (creditor's notice of a bankruptcy filing does not put the creditor on notice to inquire about possible orders limiting time for filing a proof of claim);  *In re Spring Valley Farms*, 863 F.2d 832 (11th Cir. 1989) (creditor with no notice of a bar date can file a late proof claim); *In re Yoder Co.*, 784 F.2d 1114 (6th Cir. 1985) (mere knowledge of a bankruptcy

proceeding cannot substitute for actual notice of the bar date).   Further, in determining the reason for the delay, the court must consider if it is beyond the control of the movant, which is a fact-specific determination.   *In re AMWC, Inc.*, 109 B.R. 210, 212 (Bankr. N.D. Tex. 1989).  Even if the Bankruptcy Court is correct that the Amended Complaint provided sufficient notice of the basis for removal, it is excusable that Fannie Mae would neglect to recognize it given the lack of detail.

As to the length of the delay, Fannie Mae promptly moved to remove the case four days after learning of the Appellee's Reopened Bankruptcy Case.  Moreover, there was a period of only five months in between the filing of the Appellee's First Amended Petition and the filing of the Appellants' Notice of Removal.  By contrast, courts that have held that a two year delay between the bar date and the filing of a proof of claim is excusable, so long as there is no "significant impact on judicial proceedings." *In re Pilgrim's Pride Corp.*, No. 08-45664 (DML), 2011 WL 576070, at * 4 (Bankr. N.D. Tex. Feb. 9, 2011).  The delay of five months for the Appellants to file their Notice of Removal is insignificant here, especially since the Appellee's Civil Action continued to proceed uninterrupted.

While the Bankruptcy Court accepted that Bankruptcy Rule 9006(b) might apply to a notice of removal, it decided that excusable neglect did not exist in this case under the *Pioneer* factors.  The Bankruptcy Court placed a great deal of significance on how the removal would result in a delay to the Civil Action. A notice

of removal by its very nature may, if opposed, pause a state court action until jurisdiction is determined, regardless of whether it remains in Federal Court or is remanded.  However, if such a "delay" in the pending action constitutes prejudice, then no late removal could ever satisfy the test for excusable neglect.  *See In re Lashinger*, No. 97-15113DWS, 1999 WL 409389, at *2 (Bankr. E.D. Penn Jun. 15, 1999) (finding no prejudice to the debtor for a late filed appeal); *In re Casey*, 198 B.R. 918, 923 (Bankr. S.D. Cal. 1996) ("the acts of bringing these [complaints] in themselves are not prejudicial to the debtor and do not adversely affect judicial proceedings").  Once proper jurisdiction is decided, the case should proceed just as quickly whether it is in federal or state court.  Therefore, there cannot be a prejudice to the Appellee merely because the Notice of Removal was filed.

Further, the Bankruptcy Court found under the third *Pioneer* factor that the reason for delay was an untimely removal.  However, the Court's point – that removal here was untimely – is required for any excusable neglect situation.  In other words, a late filing exists as part of any request for excusable neglect, so it cannot, as a matter of logic, be the reason for delay under the *Pioneer* test.

Thus, the Bankruptcy Court erred when it concluded that the Notice of Removal, if filed late, was not the result of excusable neglect.

## CONCLUSION

WHEREFORE, for the foregoing reasons, appellants respectfully request that this Court reverse the Bankruptcy Court's decision and find that the appellants timely filed their Notice of Removal.

Dated: December 10, 2018

Respectfully Submitted,


/s/  Matt D. Manning
Matt D. Manning, Esquire
McGlinchey Stafford
1001 McKinney Street, Suite 1500
Houston, TX 77002
Telephone:  713.335.2145
E-Mail:  mmanning@mcglinchey.com

*Counsel to Federal National Mortgage Association and Seterus, Inc.*


/s/  David S. Swan
David S. Swan, Esquire
*Admitted Pro Hac Vice*
McGuireWoods LLP
1750 Tysons Blvd, Suite 1800
Tysons, VA 22102
Telephone:703.712.5365
E-Mail:  dswan@mcguirewoods.com

*Counsel to Bank of America, N.A.*

## CERTIFICATE OF SERVICE

I, Matt Manning, hereby certify that on this 10th day of December, 2018, I caused true copies of the within *Appellants' Brief* to be served upon the following parties via first class mail, postage prepaid, via Court's ECF E-Filing Service System, and/or Via Email:

Heidi McLeod
3355 Cherry Ridge, Suite 214
San Antonio, TX 78230
(210) 853-0092
Email: heidimcleodlaw@gmail.com
**Counsel for Debtors**

Joris Robert Vanhemelrijck
Vanhemelrijck Law Offices, PC
1100 NW Loop 410, Suite 215
San Antonio, TX 78213
(210) 804-1529
Fax: (866) 830-3521
Email: jrv@vanlaws.com
**Counsel for Debtors**

William M. Clanton
LAW OFFICE OF BILL CLANTON, P.C.
926 Chulie
San Antonio, TX 78216
Telephone: (210) 226-0800
Fax: (210) 338-8660
bill@clantonlawoffice.com
**Counsel for Plaintiff**

John Patrick Lowe
Law Office of Pat Lowe
2402 East Main Street
Uvalde, Texas 78801
Telephone: 830-407-5115
**Trustee**

MCGUIREWOODS LLP
Elizabeth Chandler
2000 McKinney Avenue, Suite 1400
Dallas, Texas 75201
Telephone: 214.932.6400
Facsimile: 214.932.6499
echandler@mcguirewoods.com
**Counsel for Defendant**
**Bank of America N.A.**

Lucius James Wallace
Humphreys Wallace Humphreys, P.C.
9202 S. Toledo Ave.
Tulsa, OK 74137
(918) 747-5300
luke@hwh-law.com
**Counsel for Plaintiff**

*/s/ Matt D. Manning*
Matt D. Manning